UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-392-GWU


GLEN A. CLUNEY,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

1

06-392  Cluney

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

2

06-392  Cluney

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however,

06-392  Cluney

merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glen A. Cluney,[1] was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diabetes mellitus and diverticulosis.  (Tr. 16).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Cluney retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 18-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of Mr. Cluney's age, education, and work experience could perform any jobs if he

---

[1]Documents in the transcript suggest that the plaintiff spells his first name "Glenn" but his attorney filed the complaint using the spelling "Glen."

were limited to "light" level exertion and also had the following non-exertional restrictions. (Tr. 378). He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps and stairs, stoop, bend, crouch, and crawl; and (3) could occasionally use his right leg to push and pull and operate foot controls. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff had made previous applications for DIB and SSI, which were denied by an ALJ on August 26, 2004 (Tr. 36-48). This court affirmed the denial of benefits on January 31, 2006. Cluney v. Commissioner of Social Security, London Civil Action No. 05-65-GWU (E.D. Ky.). The ALJ in the present case noted that he was bound by the findings in the prior final decision under the holding in Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), unless there was evidence of improvement or deterioration in the claimant's condition (Tr. 18). The

06-392  Cluney

ALJ specifically found that there was no relevant change in Mr. Cluney's medical condition since the prior hearing decision.  (Id.).[2]

Mr. Cluney alleged disability due to a "drop foot," diabetes, heart disease, diverticulitis, and sleep apnea.  (Tr. 88).  All of these conditions have been alleged in his prior application except for sleep apnea (Tr. 36), and no evidence regarding sleep apnea was presented.

Mr. Cluney testified that he had problems with uncontrolled insulin-dependent diabetes mellitus, which caused weakness and blurry vision, as well as burning and itching in his legs and feet.  (Tr. 363-6, 370, 375).  His family physician, Dr. Neeraj Mahboob, had stated that his leg and foot pain was caused by varicose veins, and had prescribed the medication Neurontin.  (Tr. 366).  He did not wear support hose and had not been referred to a vascular specialist.  (Tr. 366-7).  He had also worn a right foot brace for "drop foot," which had been a longstanding problem.  (Tr. 367-8).  When asked about statements in Dr. Mahboob's office notes that he was not compliant with his medication, Mr. Cluney denied that he was not following his doctor's orders, although he had been using his wife's insulin until being put on a program about six months prior to the hearing.  (Tr. 371-2).  Mr. Cluney also

---

[2]Although the ALJ in the present decision did not include a restriction to "simple, repetitive tasks" found in the 2004 ALJ decision (Tr. 47), the error is harmless since a VE testified in the prior action that there were a significant number of jobs the plaintiff could perform with all the restrictions found by the ALJ (Tr. 48).

described having to use a blood thinner because of a heart valve problem.  (Tr. 375).

While medical records do show that Mr. Cluney was treated for a variety of problems, including a possible obstruction of the bowels and bleeding, which resulted in a diagnosis of diverticulosis (E.g., Tr. 145, 161, 189, 311-12, 320-43), no functional restrictions relating to the issue were ever established.  Likewise, he was treated by a cardiologist, Dr. Oluwole Abe, for atrial fibrillation, high cholesterol, and hypertension and underwent an echocardiogram showing a left ventricular diastolic dysfunction.   The plaintiff mainly denied having any evidence of syncope or shortness of breath, although he did have occasional dizziness, and Dr. Abe did not list any functional restrictions.  (Tr. 252-73).  He was counseled repeatedly on compliance with his medication and diabetic diet.  (Tr. 252, 255, 261).

State agency physicians who reviewed the record in 2005 disagreed with a proposal by the State Division of Disability Determination to find the plaintiff disabled because they believed severe restrictions were not supported by the medical evidence.  (Tr. 283-6, 290).  Dr. Milton H. Freedman opined that Mr. Cluney should be capable of "medium" level exertion with no other restrictions.  (Tr. 283-6).  Dr. Timothy Gregg would have limited the plaintiff to medium level exertion with a need to avoid even moderate exposure to hazards.  (Tr. 291-7).   The restrictions

accepted by the ALJ, from the prior, final decision, are generally much more limiting than found by the reviewers.

The plaintiff points to forms prepared by Dr. Mahboob on March 20, 2006, indicating that he would be limited to lifting less than 10 pounds, and less than full-time sitting and standing, in addition to a variety of other restrictions which would clearly render the plaintiff unable to hold a full-time job.  (Tr. 303-7).  The primary reason given by Dr. Mahboob for the restrictions was "diabetic neuropathy," although he also mentioned unspecified "multiple medical problems."  (Tr. 304-5). While the opinion of a treating source is normally entitled to great weight, it must be supported by objective evidence.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  As the defendant points out, Dr. Mahboob's office notes say nothing about diabetic neuropathy, and, in fact, specify that the plaintiff had no sensory or motor deficits and normal pulses.  (Tr. 275, 277, 279, 332).  Nor do examinations by other physicians suggest any findings of diabetic neuropathy.  (Tr. 148, 251, 259, 323, 326, 337).  If the plaintiff subsequently developed diabetic neuropathy, it is not documented in the medical evidence.  Therefore, substantial evidence exists to support the ALJ's rejection of Dr. Mahboob's restrictions.

Likewise, the plaintiff's complaints of blurred vision, possibly due to diabetes, are not well supported by eye examinations which showed no diabetic changes (Tr. 254, 279), and an eye examination by an unknown source at the Kentucky Eye

06-392  Cluney

Institute appeared to indicate that the plaintiff's vision was correctable. (Tr. 315-16). Likewise, Mr. Cluney's assertion that his leg and foot pain was caused by varicose veins is at odds with statements in Dr. Mahboob's office notes that he had no varicosities. (Tr. 275, 278).

Finally, the plaintiff notes statements from state agency sources which indicate that he was limited in his ability to lift and carry because of his right foot drop, which was the reason for a prescribed leg brace and use of a cane. (Tr. 292). Once again, however, while one physician, Dr. Alan Graham, did note a right foot drop, he also found that Mr. Cluney had a normal gait. (Tr. 148). Other physicians, including Dr. Peter Rock, who treated the plaintiff for several months in 2004 and 2005, did not indicate the need for a cane or a foot brace (Tr. 206-7), and neither Dr. Abe nor Dr. Mahboob found any abnormalities in gait or station (Tr. 251, 255, 259, 277-8). Whatever the source of the belief by a state agency employee that the plaintiff needed a cane and foot brace to ambulate, the present medical evidence does not show that they were required.

The decision will be affirmed.

This the 31st day of August, 2007.



Signed By:

*G. Wix Unthank*

**United States Senior Judge**

9